IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| AUDRA SWAIN, | * |
| Plaintiff, | * |
| v. | * Civil Case No. SAG-24-00458 |
| PARAMOUNT GLOBAL INC. d/b/a PARAMOUNT GLOBAL, *et al.*, | * |
| Defendants. | * |

## MEMORANDUM OPINION

Audra Swain ("Plaintiff") filed this employment action against her former employer, Paramount Global Inc. d/b/a Paramount Global ("Paramount"), the Chief Executive Officer ("CEO") of CBS Corporation, George Cheeks, and the Co-Head of CBS News & Stations, Wendy A. McMahon (collectively, "Defendants"). ECF 1. Defendants have filed a partial Motion to Dismiss Count VII of Plaintiff's Complaint, which asserts claims against all three Defendants under the Maryland Wage Payment and Collection Law ("MWPCL"). ECF 22. Plaintiff opposed the motion, ECF 25, and Defendants filed a reply, ECF 28. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, the defendants' motion to dismiss Count VII will be granted in part and denied in part.

I.     FACTUAL BACKGROUND

The facts described herein are derived from Plaintiff's Complaint and are taken as true for purposes of this motion.[1] ECF 1. Beginning in 2017, Plaintiff worked for Paramount, which later

---

[1] The Complaint contains much more detail than is summarized in this opinion, which limits itself to the facts salient to the issue regarding Plaintiff's bonus.

1

acquired CBS, as Vice President and General Manager of its Baltimore-based television station, WJZ-TV. *Id.* ¶¶ 10–11, 16. During her tenure at WJZ, Plaintiff succeeded at her job, growing the station's ratings along with its advertising dollars and revenue. *Id.* ¶¶ 64–66. Plaintiff received 110% of her eligible bonus amount for 2020. *Id.* ¶ 66. In prior years, she had always received at least 100% of her eligible bonus amount. *Id.*

Throughout her tenure, Plaintiff had disagreements with Peter Dunn, the then-President of CBS Television Stations, and other upper management, particularly concerning a program called AudNet that the company employed to sell advertising slots. *Id.* ¶¶ 30–39; 56–57. Plaintiff believed that Dunn and his associates defrauded other stakeholders regarding AudNet's use and its effect on revenues. *Id.* ¶¶ 55, 59, 63.

In 2021, following press reports of discrimination and harassment by Dunn, a Human Resources representative asked Plaintiff about her experiences with him. *Id.* ¶ 67. Plaintiff did not report discrimination or harassment but told HR about Dunn's fraudulent reporting of revenue numbers. *Id.* ¶ 68. CBS then placed Dunn on administrative leave and replaced him with Wendy McMahon. *Id.* ¶¶ 67, 73. McMahon asked Plaintiff to be part of a small team to do a "deep dive" into the AudNet finances. *Id.* ¶ 73

In June 2021, one of the employees at Plaintiff's station committed suicide. *Id.* ¶ 79. McMahon and Cheeks commended Plaintiff's leadership during that crisis. *Id.* ¶¶ 79–80. In early July, 2021, Cheeks requested a Zoom meeting with Plaintiff, during which they had a positive conversation about Plaintiff's role in the company. *Id.* ¶ 80. That same month, two general managers of CBS stations were terminated as a result of the AudNet investigation. *Id.* ¶ 81. In conversations with others, Plaintiff expressed her view that other associates of Dunn's, including high-level management, should have been sanctioned as well. *Id.* ¶¶ 81–82.

In August, 2021, Plaintiff got a new supervisor when Adrienne Roark took over as President of CBS Television stations for the East Region, including WJZ. *Id.* ¶ 84. Shortly thereafter, their relationship became strained over an incident in which Roark believed Plaintiff had called another employee a "dumbass" during a telephone call. *Id.* ¶¶ 93–96. On August 26, 2021, Roark admonished Plaintiff for the incident and imposed a week of unpaid leave as punishment. *Id.* ¶ 96. Roark demanded "a swift turnaround" in Plaintiff's conduct to avoid further discipline. *Id.*

Later that day, Plaintiff spoke with McMahon, who said Plaintiff had not been herself lately. *Id.* ¶ 98. Plaintiff said she believed she had post-traumatic stress disorder ("PTSD") as a result of the abusive workplace and stress. *Id.* McMahon suggested that Plaintiff take time off to recover from the PTSD. *Id.* ¶ 23. McMahon also credited Plaintiff's "bravery" in the AudNet investigation and stated that she would not be punished for the "dumbass" comment. *Id.* ¶ 98.

Several weeks later, a therapist diagnosed Plaintiff with PTSD, and Plaintiff began an intense therapy program. *Id.* ¶ 99. Plaintiff took leave under the Family and Medical Leave Act to address her condition. *Id.* ¶ 100. Shortly after her return to work in January, 2022, Roark and McMahon held a meeting with Plaintiff and again raised the "dumbass remark" and reminded Plaintiff that any perceived misstep would result in termination. *Id.* ¶ 102.

On January 5, 2022, Plaintiff emailed McMahon to respond to the allegations made during the call. *Id.* ¶ 103. McMahon stated that she "just wanted all this to go away" and stated that she did not think Plaintiff was an ineffective leader of WJZ. *Id.* ¶ 105.

Later in January, 2022, an HR representative informed Plaintiff, without explanation, that she was being placed on administrative leave. *Id.* ¶ 106. On January 21, 2022, a group from corporate compliance told Plaintiff that they were investigating her real estate holdings in Virginia,

3

which consisted of vacation properties, suggesting that Plaintiff was operating a business she had not disclosed. *Id.* ¶ 107. Then, on a telephone call in February, 2022, McMahon told Plaintiff she was being "terminated for cause" without specifying the cause. *Id.* ¶ 118.

Shortly after the termination call, Paramount sent Plaintiff a draft separation agreement offering to pay her 75% of her 2021 bonus in exchange for a waiver of her claims against Paramount. *Id.* ¶ 121. When Plaintiff questioned the decision, she was told that while she remained "eligible" to receive a bonus, it was at the discretion of the company. *Id.* ¶ 122. Plaintiff believed that since she had led and positioned her station in a manner that exceeded its target in 2021, she "was due for a 109% bonus, at a minimum". *Id.* ¶¶ 122, 130. In fact, Plaintiff had already allocated bonuses to the bonus-eligible people on her staff based on a formula that Paramount used to calculate employee bonuses. *Id.* ¶ 122.

Plaintiff never received her full bonus for 2021, despite emailing a request to Cheeks. *Id.* ¶ 124. Plaintiff alleges "upon information and belief" that McMahon and Cheeks made the decision to withhold her bonus. *Id.* ¶¶ 127, 128.

Earlier this year, Plaintiff filed the instant seven-count action. ECF 1. In Count VII, relevant to this motion, she files a claim under the MWCPL against Paramount, Cheeks, and McMahon, alleging that her 2021 bonus constituted "wages that Plaintiff had already earned prior to her termination."[2] *Id.* ¶ 177. She claims that Cheeks and McMahon each constitute "an employer under the MWPCL" and can therefore be held jointly and severally liable with Paramount for withholding her earned wages. *Id.* ¶¶ 181–82.

---

[2] The Complaint has a couple of apparent typographical errors, including captioning the MWCPL count as a second "Count V" instead of "Count VII," and, in ¶ 177, referring to "work completed in 2022" when it appears she intended to say 2021.

## II.     LEGAL STANDARDS

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' ..."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a

complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Id.* at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

### III.  ANALYSIS

Defendants make two arguments to support their motion to dismiss Plaintiff's MWPCL claim. First, they contend that the claim fails because her bonus does not qualify as a wage. Second, they argue that if her bonus is a wage, the claim against the individual defendants, McMahon and Cheeks, must be dismissed because they were not her "employers" under the statute. Each argument is addressed below.

### A. Is the Bonus a Wage?

Under the "low bar" applicable at the motion to dismiss stage, Plaintiff has plausibly alleged that her bonus qualifies as a wage.

Section 30591 of the MWPCL defines a "wage" as "all compensation that is due to an employee for employment," including "a bonus" and "any other renumeration promised for service." MWPCL § 3-501(c)(2). But not all bonuses fall under this definition: A bonus that is not promised as part of compensation for employment does not count as a wage. *Whiting-Turner Contracting Co. v. Fitzpatrick*, 783 A.2d 667, 672 (Md. 2001). Some courts have concluded that a bonus is not promised when the applicable contract gives the employer the right to "adjust the amount of any commission at its sole discretion." *Martignetti v. Int'l Bus. Machines Corp.*, 855 F. App'x 857, 861 (4th Cir. 2021); *see also Kramer v. Wabtec Corp.*, Civ. No. AW-07-2452, 2008 WL 11509712, at *6 (D. Md. Aug. 27, 2008) (finding a lack of promise to reimburse plaintiff for relocation expenses because the applicable policy stated that the employer "may" authorize, but "assumes no obligation for," such expenses).

Defendants argue that the bonus is discretionary, citing to Plaintiff's offer letter and the company's Short-Term Incentive Plan ("STIP"). The STIP provides that "[t]he Administrators are authorized to interpret the Plan, identify the Participants and determine the amount of any Bonuses and the terms and conditions for payments made under the Plan." ECF 22-4 ¶ 2. It further specifies that "[n]o Company employee shall have any claim or right to receive a Bonus under the Plan." *Id.* ¶ 7. And Plaintiff's offer letter says, the "annual 'target' bonus incentive under the Company's [STIP] will be an amount equal to 50% of [the] base salary. The precise amount of such bonus payment, if any, will be determined on an annual basis and will depend on Company and individual performance." ECF 22-3 at 2.

Despite this language, Plaintiff alleges the existence of a set formula that Paramount applied to calculate employee bonuses and that only a small portion, if any, of the bonus payment was discretionary. ECF 1 ¶ 122. She alleges that she calculated bonuses for her subordinate employees in accordance with that formula. *Id.* Plaintiff further alleges that in prior years she had always received at least 100% of her eligible bonus, which made up approximately 33% of her annual pay. *Id.* ¶¶ 66, 122.

At this stage, taking all of Plaintiff's allegations as true, she has stated a plausible claim that her bonus was not discretionary and constituted a wage for purposes of the MWCPL. Defendants are of course free to re-raise this issue at later stages of the proceeding on a more complete factual record.[3]

### B. Are Cheeks and McMahon Employers under the MWCPL?

The MWCPL's definition of "employer" is "any person who employs an individual ... or a successor of the person." MWCPL § 3-501(b). Mere supervisors, officers, or agents acting on behalf of a corporation do not qualify as "employers." *See Campusano v. Lusitano Constr. LLC*, 56 A.3d 303, 310 (Md. Ct. Spec. App. 2012) (declining to "set the precedent that any manager who has some direction in hiring, wages, and other conditions of employment is *personally liable* for wages that the manager's own employer is unable or unwilling to pay.") (emphasis in original). A corporate officer or person with an ownership interest in an employing company is considered an "employer" if the person has "sufficient control" over the financial affairs of the corporation and its employees, measured by the "economic reality" test, which considers: (1) whether the

---

[3] Even if this Court was to consider Defendants' proposed documents at this stage, the language of the offer letter suggests that the STIP bonus was not absolutely discretionary, or at least less discretionary than another incentive program, the Long-Term Management Incentive Plan, which was expressly subject to "the sole discretion of the Company's Board of Directors and its Compensation Committee." ECF 22-3 at 2.

8

individual had the power to hire and fire employees; (2) whether the individual supervised and controlled the employee work schedules or conditions of employment; (3) whether the individual determined the rate and method of pay; and (4) whether the individual maintained employment records of the employee. *Id.* at 309. The essence of a "true employer-employee relationship" involves a "bargained for exchange of labor for mutual economic gain." *Harker v. State Use Indus.*, 990 F.2d 131, 133 (4th Cir. 1993).

Here, Plaintiff has not alleged sufficient facts to establish that either Cheeks or McMahon exercised the requisite degree of control over Paramount's financial affairs, or Plaintiff's employment, to be an "employer" under the MWCPL. Of course, they had high-level roles as officers of the company (or its subsidiary entity), but Plaintiff has not asserted facts establishing the degree of granular control necessary to transform a managerial employee into an "employer" for wage payment purposes. Cheeks, in particular, as CEO of CBS, had very few direct interactions with Plaintiff. The Complaint only alleges his commendation after the employee suicide in June, 2021, a single Zoom meeting in July, 2021, and then an email, to which Cheeks did not respond, after Plaintiff's termination in early 2022. ECF 1 ¶¶ 79, 80, 124.

Plaintiff alleges more interaction with McMahon, including discussions about Plaintiff's medical leave, *id.* ¶¶ 23, 98, but again none that suggests the requisite degree of control over Plaintiff's employment. In fact, Plaintiff specifically alleged that shortly before her termination, McMahon expressed satisfaction with Plaintiff's leadership and a desire that "all this would go away," *id.* ¶ 105, suggesting that other supervisors were directing the course of events with respect to Plaintiff's employment and discipline. The Complaint is devoid of allegations that McMahon dictated Plaintiff's work schedule, determined her rate or manner of pay, or personally maintained her employment records. The mere fact that McMahon informed Plaintiff of her termination does

9

not make her an "employer." *See Odjaghian v. HHS Tech. Grp., LLC*, 848 F. App'x 534 (4th Cir. 2021) (upholding dismissal of former CEO as "employer" where he had informed plaintiffs of their termination because he was not involved in the payment of Plaintiffs' wages).

While not determinative, this Court notes that, typically, individual defendants are deemed "employers" in the context of small companies where the individual owners are directly running the business and making all employee-related decisions, and where the company itself may be undercapitalized. This case presents virtually the opposite situation, in that the named individual defendants are high-level employees of major corporate media companies. Plaintiff has alleged insufficient facts to hammer her square peg into a round hole, and accordingly Count VII will be dismissed as to her claims against Cheeks and McMahon.

### IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF 22, is GRANTED as to the claims in Count VII against Cheeks and McMahon, and DENIED as to the remainder of Count VII against Paramount. A separate Order follows.

Dated: July 25, 2024                             /s/
                                                        Stephanie A. Gallagher
                                                        United States District Judge