UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| AUDRA SWAIN,<br><br>              Plaintiff,<br><br>  -against-<br><br>PARAMOUNT GLOBAL INC. d/b/a PARAMOUNT GLOBAL,<br><br>              Defendant. | NO. 1:24-CV-00458-SAG |

**DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Page

I. Introduction ................................................................................................................. 1

II. Plaintiff Failed To Respond To Defendant's Factual Allegations As Required By Federal Rule of Civil Procedure 56 ........................................................................ 2

III. Summary Judgment Should Be Granted On Plaintiff's Sarbanes-Oxley Whistleblower Retaliation Claim Because Plaintiff Cannot Establish A Prima Facie Case Of SOX Retaliation Or Refute That CBS Would Have Terminated Her Employment Regardless Of Any Protected Activity ........................ 3

    A. Plaintiff Failed to Demonstrate That She Engaged in Protected Activity Because She Did Not Show Her Belief Was Objectively Reasonable .................. 3

    B. Plaintiff's Opposition Failed To Establish That Her Alleged Protected Activity Was A Contributing Factor To Her Termination Based On The Attenuated Temporal Proximity And Intervening Events ...................................... 4

        1. *Plaintiff Did Not Dispute The Lack of Temporal Proximity Between Her AudNet Complaints And Her Termination* ........................... 5

        2. *Plaintiff's Undisputed Poor Performance Served As A Legitimate Intervening Event Severing Any Causal Connection* ................................ 6

        3. *Plaintiff's Causation Claim Is Further Negated By Her Failure To Dispute Her Own Involvement in AudNet's Review, Or That The Other GMs Involved Were Not Terminated* ............................................... 6

    C. Plaintiff's Unsupported Allegations Cannot Overcome The Undisputed Facts Showing That CBS Would Have Terminated Plaintiff's Employment In The Absence Of Plaintiff's Alleged Protected Activity ................................... 7

IV. Summary Judgment Should Be Granted On Plaintiff's Maryland Wage Payment and Collection Law Claim Because The Discretionary STIP Does Not Qualify As A Wage ........................................................................................... 9

    A. Plaintiff Failed To Demonstrate That the Plain Language Of Her Offer Letter And The STIP Indicate The STIP Was Part Of Her Promised Compensation ....................................................................................................... 9

    B. Plaintiff's Bonus Is Not A Wage For The Additional, Independent Reason That It Depended On Company Performance ....................................................... 12

V. Conclusion ................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                       **Page(s)**

*Anderson v. EtherWAN Systems, Inc.*,
　No. CV GLR-22-890, 2023 WL 200114 (D. Md. Jan. 17, 2023) ...........................................10

*Aronson & Co. v. Fetridge*,
　957 A.2d 125 (Md. 2008) ......................................................................................................12, 13

*Barrick v. PNGI Charles Town Gaming, LLC*,
　799 F. App'x 188 (4th Cir. 2020) ..................................................................................................6

*Blanch v. Chubb & Sons, Inc.*,
　124 F. Supp. 3d 622 (D. Md. 2015).............................................................................................12

*Carr v. Cent. Piedmont Action Council Inc.*,
　101 F. Supp. 2d 839 (W.D. Va.), *aff'd*, 208 F.3d 208 (4th Cir. 2000) .........................................3

*Feldman v. Law Enf't Assocs. Corp.*,
　752 F.3d 339 (4th Cir. 2014) ..............................................................................................4, 5, 7

*Garcia v. Fujitec Am., Inc.*,
　621 F. Supp. 3d 577 (D. Md. 2022)............................................................................................11

*Harvey v. Jai Med. Ctr.*,
　No. 20-cv-02860-SAG, 2021 WL 4553235
　(D. Md. Oct. 5, 2021) (Gallagher, J.).............................................................................................4

*Hoffman v. Hoover*,
　No. CV GLR-17-2431, 2022 WL 888435 (D. Md. Mar. 25, 2022) .............................................8

*Lanasa v. AstraZeneca Pharms. LP*,
　2023 WL 2527209 (D. Md. Mar. 15, 2023)................................................................................11

*Livingston v. Wyeth, Inc.*,
　520 F.3d 344 (4th Cir. 2008) .............................................................................................3, 5, 6

*Martignetti v. Int'l Bus. Machines Corp.*,
　855 F. App'x 857 (4th Cir. 2021) ..........................................................................................11, 12

*Medex v. McCabe*,
　811 A.2d 297, 372 Md. 28 (2002) ..............................................................................................10

*Mott v. Accenture, LLP*,
　No. 8:17-cv-00231-PX, 2019 WL 1934727 (D. Md. Apr. 29, 2019) .........................................11

*Northrop Grumman Sys. Corp. v. United States Dep't of Lab., Admin. Rev. Bd.*,
   927 F.3d 226 (4th Cir. 2019) ..................................................................................................3

*Owens v. Northwood Ravin, LLC*,
   No. 3:21-cv-00373-FDW-DCK, 2022 WL 17970211
   (W.D.N.C. Dec. 27, 2022) ....................................................................................................7

*Provident Bank of Md. v. McCarthy*,
   383 F. Supp. 2d 858 (D. Md. 2005)....................................................................................10

*Puffenbarger v. Engility Corp.*,
   151 F. Supp. 3d 651 (E.D. Va. 2015) ................................................................................4, 9

*Ridgell v. Astrue*,
   No. DKC 10-3280, 2012 WL 707008 (D. Md. Mar. 2, 2012) ..............................................3

*Ridgell v. Hartford Fire Ins. Co.*,
   No. CV DLB-23-1236, 2024 WL 555137 (D. Md. Feb. 12, 2024) ..........................11, 12, 13

*Sorensen v. Westec InterActive Sec., Inc.*,
   No. CV DKC 2007-2841, 2008 WL 11367535 (D. Md. Sept. 2, 2008)..................................11

*Whitting-Turner Contracting Co. v. Fitzpatrick*,
   783 A.2d 667, 366 Md. 295 (2001) ..........................................................................10, 11,12

*Williams v. U.S. Dep't of Lab.*,
   157 F. App'x 564 (4th Cir. 2005) ......................................................................................5, 6

*Willis v. Stanley Black & Decker, Inc.*,
   No. CV DKC 12-1991, 2012 WL 6019364 (D. Md. Nov. 30, 2012) ................................9, 11

**Statutes**

MWPCL § 3-501(c)(2) .......................................................................................1, 2, 9, 11, 12, 13

Sarbanes-Oxley Act, 18 U.S.C. § 1514A.................................................................................1, 3

**Other Authorities**

Fed. R. Civ. P. 56 ...................................................................................................................1, 2, 3

Fed. R. Civ. P. 56 (c)(1) .............................................................................................................2, 3

Fed. R. Civ. P. 56 (e) ......................................................................................................................3

I.   **Introduction**

After years of litigation, when confronted with the reality of having to come forward with actual evidence to support her assertions, Plaintiff Audra Swain ("Plaintiff")[1] abandoned nearly all of the claims in her Complaint (Dkt. 1). She concedes that summary judgment is appropriate on Counts II, III, IV, V and VI. All that remain are her claims for retaliation under the Sarbanes-Oxley Act of 2022 ("SOX") (Count I) and Maryland Wage Payment and Collection Law ("MWPCL") (Count VII).

The two remaining claims are meritless and should be dismissed. As an important threshold matter, Plaintiff did not adhere to Rule 56's requirements. She made no effort whatsoever to respond to Defendant's separately-filed Statement of Undisputed Facts and supporting evidence. The only "evidence" that Plaintiff proffers is her own self-serving affidavit that simply parrots the allegations in the Complaint and otherwise states that some of Defendant's assertions are "false." This is plainly insufficient, and the Court should grant summary judgment on this basis alone.

Even if the Court were willing to ignore this fatal flaw, it is readily apparent that Plaintiff's remaining claims lack evidentiary support and should be dismissed. First, Plaintiff's SOX claim fails because she does nothing to rebut the legitimate, non-retaliatory reason for her termination: her indisputably poor performance. Nor could she. She does not even bother to address the many documented deficiencies that Defendant raised in its opening brief. Rather, in a last-ditch effort to avoid dismissal, she argues that because Defendant referenced AudNet in the discussion where she

---

[1] All terms used but not defined herein have the meanings ascribed to them in CBS's moving brief ("CBS's Motion" or "MSJ."). Plaintiff's Memorandum in Support of her Opposition to Defendant's Motion for Summary Judgment is referred to herein as "Plaintiff's Opposition," "Opposition" or "Opp." CBS's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment is referred to herein as "CBS SF." Plaintiff's Statement of Disputed Material Facts in Support of Her Opposition is referred to herein as "Plaintiff's SF" or "Pl. SF." The Affidavit of Audra Swain is referred to herein as "Plaintiff's Affidavit" or "Pl. Aff." The Declarations of Wendy Charest, Cynthia Glasgow, Wendy McMahon, Adrienne Roark, Mark Beatty, and Linda Davidoff are referred to herein as "Charest Decl.," "Glasgow Decl.," "McMahon Decl.," "Roark Decl.," "Beatty Decl.," and "Davidoff Decl." respectively.

learned of her termination, this somehow creates an issue of fact that precludes summary judgment. This is nonsensical. Plaintiff conveniently ignores that Defendant referenced AudNet only in the context of closing out Defendant's review of an issue she raised *after she was already placed on administrative leave because of serious allegations of misconduct made by employees who reported to her.* Moreover, the actual decision makers all stated that Plaintiff's AudNet complaints were not considered when making the decision to terminate Plaintiff's employment.

Second, Plaintiff's MWPCL claim fails because her bonus was discretionary under the plain language of her offer letter and the Short-Term Incentive Plan ("STIP"). Plaintiff's own subjective belief to the contrary is irrelevant, and the weight of authority is clear: a discretionary bonus like that at issue is not a wage under the MWPCL.

For these reasons, as well as those advanced in Defendant's opening brief, summary judgment is appropriate and Counts I and VII should be dismissed with prejudice.

## II.     Plaintiff Failed To Respond To Defendant's Factual Allegations As Required By Federal Rule of Civil Procedure 56

Summary judgment is appropriate because Plaintiff's Opposition fails to adhere to the requirements of Federal Rule of Civil Procedure 56 ("Rule 56"). Under Rule 56(c)(1), "A party asserting that a fact . . . is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). CBS submitted a detailed Statement of Undisputed Facts with sworn affidavits and documentary evidence that support dismissal of Plaintiff's claims. Almost without exception, Plaintiff did not respond to Defendant's submission at all. For those few facts Plaintiff does acknowledge, she merely claims CBS's evidence is "false," without offering further explanation or any evidentiary support.

Per Rule 56(e), "[i]f a party fails to properly support [or] address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed for purposes of the motion; [or] grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." Fed R. Civ. P. 56(e)(2)–(3); *see also Carr v. Cent. Piedmont Action Council Inc.*, 101 F. Supp. 2d 839, 840 (W.D. Va.), *aff'd*, 208 F.3d 208 (4th Cir. 2000) (granting summary judgment for Defendant where Plaintiff "did not respond, as required by Rule 56, with specific facts or arguments that refuted the Defendant's assertions" and instead "set forth general conclusive statements [like] '[w]e do not believe that [Defendant] can sustain its burden of production.'"); *Ridgell v. Astrue*, No. DKC 10-3280, 2012 WL 707008 (D. Md. Mar. 2, 2012). For this reason alone, summary judgment is appropriate.

**III.    Summary Judgment Should Be Granted On Plaintiff's Sarbanes-Oxley Whistleblower Retaliation Claim Because Plaintiff Cannot Establish A Prima Facie Case Of SOX Retaliation Or Refute That CBS Would Have Terminated Her Employment Regardless Of Any Protected Activity**

The undisputed record shows that CBS terminated Plaintiff for her persistent poor performance. Plaintiff did nothing to rebut the evidence Defendant proffered on this critical point. Plaintiff also fails to establish a *prima facie* case of SOX retaliation, as discussed below.

**A.    Plaintiff Failed To Demonstrate That She Engaged In Protected Activity Because She Did Not Show Her Belief Was Objectively Reasonable**

Plaintiff did not present evidence that AudNet was anything more than a business decision regarding how to best sell advertisement slots. Simply restating the allegations in the Complaint in the form of an affidavit does not demonstrate that she held "an objectively reasonable belief that the company intentionally misrepresented or omitted certain facts to investors, which were material and which risked loss." *Northrop Grumman Sys. Corp. v. United States Dep't of Lab., Admin. Rev. Bd.*, 927 F.3d 226, 235 (4th Cir. 2019) (citation omitted); *see also Livingston v. Wyeth, Inc.*, 520 F.3d 344, 352 (4th Cir. 2008). Plaintiff objects to AudNet sales being presented as "new

revenue." However, Plaintiff does not dispute that "CBS stations rarely sell every advertisement slot on all stations across the country" and therefore used AudNet "to sell advertising slots that were not otherwise readily sold." (CBS SF ¶ 97). Moreover, Plaintiff acknowledged that AudNet "made sense for independent stations" and that at least one station felt using AudNet was doing them a favor. (CBS SF ¶ 102). Therefore, it was not objectively reasonable to believe that AudNet was not generating at least some "new revenue" by selling slots the stations would not have otherwise sold.

Plaintiff alleges that the displaced station revenue was at least four times the AudNet sales presented as new revenue, but provides no evidence to support this allegation. (Opp. at 4). Instead, when asked whether AudNet was "new revenue" for other stations, Plaintiff responded that she "can only speak to WJZ." (CBS SF ¶ 106). *See, e.g.*, *Puffenbarger v. Engility Corp.*, 151 F. Supp. 3d 651, 660–61 (E.D. Va. 2015) (granting summary judgment to employer on SOX claim where the plaintiff did not show any material effect on the financial statements).

### B. Plaintiff's Opposition Failed To Establish That Her Alleged Protected Activity Was A Contributing Factor To Her Termination Based On The Attenuated Temporal Proximity And Intervening Events

Plaintiff must prove "by a preponderance of the evidence that the [alleged protected] activities tended to affect [her] termination." *Feldman v. Law Enf't Assocs. Corp.*, 752 F.3d 339, 348 (4th Cir. 2014). Although Plaintiff attempts to characterize this legal standard as "notably low," the Fourth Circuit makes clear that the standard must not be rendered "toothless," as it is an essential element of a *prima facie* case. *Id.* at 350; *see also Harvey v. Jai Med. Ctr.*, No. 20-cv-02860-SAG, 2021 WL 4553235, at *3 (D. Md. Oct. 5, 2021) (Gallagher, J.) ("[S]ummary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case.") (citation omitted).

1.  **Plaintiff Did Not Dispute The Lack Of Temporal Proximity Between Her AudNet Complaints And Her Termination**

The timeline of Plaintiff's complaints is undisputed. Plaintiff first raised concerns about AudNet in 2019. (CBS SF ¶ 98; Opp. at 5). She raised the same concerns in January 2021. (MSJ at 11; Opp. at 6). In April 2021, Plaintiff complained to newly appointed President and Co-Head of CBS News and Stations Wendy McMahon, who immediately took action, forming an AudNet Review Committee in May 2021 including Plaintiff and other GMs (MSJ at 11, 23; Opp. at 7). In June 2021, based in part on input from Plaintiff and the Committee, Ms. McMahon directed that AudNet be made optional for the stations. (MSJ at 12; Opp. at 7). **Plaintiff admits she had no further issues with AudNet after June 2021—approximately *9 months* prior to the termination of her employment. (CBS SF ¶ 104).** This undisputed temporal gap severs any causal connection between Plaintiff's alleged protected activity and her termination. *See Feldman*, 752 F.3d at 349 (holding that a "lengthy gap in time weighs against a finding that . . . the alleged protected activities played a role in [the employee's] termination.").

Plaintiff attempts to manufacture an issue of fact on her SOX claim by arguing that she again engaged in protected activity in late January 2022 when she raised the very same concerns about AudNet that had already been resolved. Re-raising resolved complaints is not protected activity and cannot create temporal proximity. *Livingston*, 520 F.3d at 352 (SOX "requires [a plaintiff] to have held a reasonable belief about an *existing* violation"); *Williams v. U.S. Dep't of Lab.*, 157 F. App'x 564, 570 (4th Cir. 2005) ("Once [Plaintiff's] concerns were addressed, however, it was no longer reasonable for her to continue [submitting complaints] and her activities lost their character as protected activity.").

### 2. Plaintiff's Undisputed Poor Performance Served As A Legitimate Intervening Event Severing Any Causal Connection

It is undisputed that, after Plaintiff's concerns with AudNet were resolved, she was counseled for poor responsiveness and unprofessionalism, was overheard saying "dumbass" on a management call, had multiple employees complain about her management, received a final written performance warning, then had two employees resign due to her management. (CBS SF ¶¶ 11-78). Each of these are "'legitimate intervening event[s]' severing any causal connection between the reported activity and [Plaintiff's] termination." *Barrick v. PNGI Charles Town Gaming, LLC*, 799 F. App'x 188, 189–90 (4th Cir. 2020) (holding protected activity was not a contributing factor to termination where employee "had received a final written warning from the [employer] before engaging in any protected activity"). Plaintiff does not dispute these legitimate reasons for her termination.

### 3. Plaintiff's Causation Claim Is Further Negated By Her Failure To Dispute Her Own Involvement In AudNet's Review, Or That The Other GMs Involved Were Not Terminated

Plaintiff admits that Ms. McMahon immediately acknowledged her concerns and involved her on the AudNet Review Committee. (Opp. at 7). Plaintiff also does not dispute that Ms. McMahon ultimately adopted Plaintiff's preferred course of action and made AudNet optional for CBS stations. (*Id.*; CBS SF ¶ 104). Yet Plaintiff now claims Defendant decided months later to terminate her in retaliation for making the very recommendations it chose to adopt, which does not satisfy her burden of production. *Livingston*, 520 F.3d at 352; *Williams*, 157 F. App'x at 570.

Furthermore, Plaintiff was not the only GM on the AudNet Review Committee. (Opp. at 7). Plaintiff does not dispute that the other GMs raised similar complaints about AudNet and were not terminated. (CBS SF ¶ 103). The Fourth Circuit has refused to find an employee's protected activity was a contributing factor to their termination when others who engaged in the same protected activity were not terminated. *See Barrick*, 799 F. App'x at 190 (finding protected activity

was not a contributing factor to termination where "[employee's] father, who engaged in the same protected activity, remains employed by the [employer]"); *Feldman*, 752 F.3d at 349 (same).

### C. Plaintiff's Unsupported Allegations Cannot Overcome The Undisputed Facts Showing That CBS Would Have Terminated Plaintiff's Employment In The Absence Of Plaintiff's Alleged Protected Activity

Even if Plaintiff could somehow establish a *prima facie* case of retaliation, which she failed to do, the undisputed facts demonstrate that CBS would have terminated Plaintiff's employment in the absence of her alleged protected activity, entitling it to summary judgment. *See Owens v. Northwood Ravin, LLC*, No. 3:21-cv-00373-FDW-DCK, 2022 WL 17970211, at *10–11 (W.D.N.C. Dec. 27, 2022).

CBS terminated Plaintiff's employment based solely on her indisputably poor performance. Plaintiff's only argument to avoid summary judgment is that during the discussion where she learned about her termination, AudNet was referenced, and this somehow creates an issue of fact that should be decided by a jury. However, Plaintiff's complaints were only addressed because Plaintiff re-raised the very same concerns *after* she was placed on administrative leave and *after* an investigation was commenced into her misconduct. (Compl. ¶ 109; CBS SF ¶ 97; Davidoff Decl. ¶¶ 5-6). After Plaintiff voiced the same concerns about AudNet, CBS looked into them and determined that when Plaintiff "raised those concerns with new management, management responded to [her] concerns by asking [her] to serve on a committee that evaluated the use of AudNet at CBS Television Stations, and the changes [Plaintiff] had sought were made to the initiative."[2] (Charest Decl. Ex. 7). This in no way creates an issue of fact and does not disrupt the undisputed facts that led to Plaintiff's termination. Additionally, the actual decision makers "all

---

[2] Plaintiff admits that she had no further issues with AudNet after it was made optional in June 2021. (CBS SF ¶ 104).

stated that Plaintiff's AudNet complaints were not considered when making the decision to terminate Plaintiff's employment." (CBS SF ¶ 109).

In short, Plaintiff has no evidence whatsoever that her complaints about AudNet factored into CBS's decision in any way. Plaintiff merely states that she "has denied all of the rationales advanced by the Defendant," therefore the Defendant's motivations for her termination are for the jury to decide. (Opp. at 11). This is in stark contrast to Defendant's Motion, in which the factual allegations were supported by affidavits from five witnesses, documentary evidence, and Plaintiff's own deposition testimony. "This is not a case where two parties present different factual narratives of an event they both witnessed or experienced. Rather, this is a case where one party, [Defendant], has offered testimonial evidence supporting a fact narrative, and the other party, [Plaintiff], calls on this Court to find a genuine issue of material fact regarding whether that testimony was truthful. The Court declines to do so." *Hoffman v. Hoover*, No. CV GLR-17-2431, 2022 WL 888435, at *5 (D. Md. Mar. 25, 2022).

Plaintiff's claim of her "consistently excellent performance" is also unsupported by the record.[3] (Opp. at 11). Plaintiff does not dispute that her lack of responsiveness and failure to meet

---

[3] For example, Plaintiff says she was recognized internally and by broadcast outlets as one of the top leaders at CBS but provides no evidence of this alleged recognition. (Opp. at 12). Plaintiff outlines her alleged community outreach efforts, many of which mirror the allegations in her complaint without any further corroboration. (*Id.*). Plaintiff claims she had the "lowest amount of staff turnover among the CBS Televisions Stations Group," (*Id.*) without acknowledging that two of her long-term employees resigned just weeks before her termination, each citing Plaintiff as the reason for their resignation. (CBS SF ¶¶ 72-78). Plaintiff's Affidavit also references receiving "hundreds of texts and phone calls from the staff at WJZ" and attaches "a portion." (Pl. Aff. ¶ 15, Ex. 2). However, these texts lack dates, full names of the individual sending the texts, or any other foundation. These unsupported allegations do not create a genuine issue of material fact. See *Hoffman*, 2022 WL 888435, at *5.

Plaintiff also attaches two surveys to support her claim of strong performance, but neglects to provide critical context that demonstrates her poor performance. The first, a Workplace EQ survey, allegedly places Plaintiff "among the top of all the general managers in her group." (Opp. at 13). However, the survey does not compare Plaintiff to other GMs, but compares Plaintiff's self-assessment to the assessment of her managers, direct reports, and others. (Opp. Ex. 3). The results reveal that Plaintiff's manager rated her significantly lower than she rated herself on most metrics. (*Id.*). Plaintiff attaches her ViacomCBS Global Survey, as proof that her scores "were near the top for all the general managers in CBS." (Opp. at 13; Opp. Ex. 2). However, Plaintiff includes only her results from her five direct reports. Her scores from the larger group of 78 respondents were far lower. (McMahon Decl. Ex. 2). Additionally, Plaintiff ignores that, on the same survey, her station scored in either the bottom 25% or bottom 50% in 17 out of 18 categories. (CBS SF ¶ 62).

deadlines were flagged by managers and employees as early as January 2020 (CBS SF ¶¶ 11-12). Plaintiff also does not dispute her issues with professionalism, including her unpreparedness for and frequent cancellation of meetings. (CBS SF ¶¶ 21-22, 29-30). Most notably, Plaintiff does not dispute that multiple people on the August 24, 2021 GM Call heard her use the phrase "dumbass" while her colleague, Michele Scaringella, was speaking. (CBS SF ¶¶ 31-37; Pl. SF ¶¶ 20-22) Although Plaintiff claims to have "no recollection of ever saying 'dumbass' on a call" (Pl. Aff. ¶ 36), she admitted during her deposition that she "may have said 'dumbass' while the call was going on" (CBS SF ¶ 36) and does not deny that she admitted the outburst to her psychiatrist just weeks after the incident. (CBS SF ¶ 37). Plaintiff's Opposition does not acknowledge CBS's receipt of negative feedback about Plaintiff's management, an anonymous complaint, and two resignation letters blaming Plaintiff for causing the employees' mental breakdowns. (CBS SF ¶¶ 55-57, 72-78). Plaintiff's Opposition also fails to acknowledge CBS's investigation and corroboration of these complaints, which ultimately led to her termination. (CBS SF ¶¶ 79-83). On these facts, Plaintiff's SOX retaliation claim must fail. *See Puffenbarger*, 151 F. Supp. 3d at 661–63.

**IV.     Summary Judgment Should Be Granted On Plaintiff's Maryland Wage Payment And Collection Law Claim Because The Discretionary STIP Does Not Qualify As A Wage**

**A.     Plaintiff Failed To Demonstrate That The Plain Language Of Her Offer Letter And The STIP Indicate The STIP Was Part Of Her Promised Compensation**

"[T]he critical question [in an MWPCL case] is whether an employee is entitled to a non-discretionary bonus at the time of his termination based on a contractual obligation or binding promise undertaken by his employer." *Willis v. Stanley Black & Decker, Inc.*, No. CV DKC 12-1991, 2012 WL 6019364, at *5 (D. Md. Nov. 30, 2012). The plain language of Plaintiff's offer letter and the STIP documents make no such promise to Plaintiff, but instead clearly and repeatedly reserve CBS's discretion.

Plaintiff's offer letter states that "[t]he precise amount of such bonus payment, *if any*, will be determined on an annual basis and will depend on Company and individual performance." (Robinson Decl. Ex. 4) (emphasis added). Like Plaintiff's offer letter, the STIP also makes clear the discretionary nature of the bonus at issue, providing that the "Administrators are authorized to . . . determine the amount of any Bonuses and the terms and conditions for payments made," and that "[e]ach Administrator . . . may amend or modify the Plan . . . at any time." (Roark Decl. Ex. 9). The STIP also includes a clear disclaimer that "[n]o Company employee shall have any claim or right to receive a Bonus under the Plan." (*Id.*).

Plaintiff mistakenly attempts to refute this plain language by arguing that she "understood the offer letter to be clear: if the company and she hit the revenue targets, then she was entitled to a bonus of at least 50% of her salary" and that she would not have taken the job if she understood her bonus to be discretionary. (Opp. at 18; Pl. Aff. ¶¶ 1-3). Plaintiff's own subjective believe is irrelevant, and the cases she cites are easily distinguishable because they involve specific, non-discretionary conditions that triggered the payments, such as commissions for meeting sales goals and remaining employed for at least two years. *See Medex v. McCabe*, 811 A.2d 297, 302–03 (Md. 2002) (sales commissions); *Anderson v. EtherWAN Systems, Inc.*, No. CV GLR-22-890, 2023 WL 200114, at *2–5 (D. Md. Jan. 17, 2023) (sales commissions); *Provident Bank of Md. v. McCarthy*, 383 F. Supp. 2d 858, 859–60 (D. Md. 2005) (interest payment upon termination); *Whitting-Turner Contracting Co. v. Fitzpatrick*, 783 A.2d 667, 672–73 (Md. 2001) (profit sharing).

Further undermining Plaintiff's argument, all documents explicitly describe Plaintiff's bonus as a "target." The STIP FAQ makes clear that this 50% "target" to which Plaintiff claims she was entitled was just one of four variables used to calculate her bonus. (Roark Decl. Ex. 10). Plaintiff's performance was factored into her bonus using the Individual Performance Multiplier,

not her annual "target." (*Id.*). Plaintiff's offer letter does not promise her an "annual bonus" of at least 50% of her base salary, it states that her "annual '***target***' bonus will be an amount equal to 50% of [her] base salary." (CBS SF ¶ 89; Robinson Decl. Ex. 4) (emphasis added). The offer letter separately addresses the discretionary performance variables, stating that "[t]he precise amount of such bonus payment, *if any*, will depend on Company and individual *performance*." (*Id.*) (emphasis added). The documents thus specify that this bonus was discretionary, removing it from the purview of the MWPCL. *See Martignetti v. Int'l Bus. Machines Corp.*, 855 F. App'x 857, 861 (4th Cir. 2021); *Ridgell v. Hartford Fire Ins. Co.*, No. CV DLB-23-1236, 2024 WL 555137, at *3 (D. Md. Feb. 12, 2024); *Lanasa v. AstraZeneca Pharms. LP*, No. CV DLB-22-1399, 2023 WL 2527209, at *4–6 (D. Md. Mar. 15, 2023); *Garcia v. Fujitec Am., Inc.*, 621 F. Supp. 3d 577, 583–84 (D. Md. 2022); *Mott v. Accenture, LLP*, No. 8:17-cv-00231-PX, 2019 WL 1934727, at *19 (D. Md. Apr. 29, 2019); *Willis*, 2012 WL 6019364, at *4–6; *Sorensen v. Westec InterActive Sec., Inc.*, No. CV DKC 2007-2841, 2008 WL 11367535, at *8 (D. Md. Sept. 2, 2008). Plaintiff does not even attempt to distinguish any of these cases because she cannot. The weight of authority is clear: a discretionary bonus like the STIP is not a wage under the MWPCL.

The documents also make clear that management had discretion to determine Plaintiff's bonus by setting her Individual Performance Multiplier. Contrary to Plaintiff's narrow characterization, her "performance" as a GM was evaluated on much more than whether her station hit its revenue targets. The undisputed facts demonstrate that Plaintiff was unresponsive, showed poor professionalism, and that morale at her station was so low that two employees resigned, blaming Plaintiff's management. (CBS SF ¶¶ 11-78). Therefore, CBS did not, as Plaintiff argues, deny Plaintiff's bonus for "any reason under the sun." Rather, CBS exercised its discretion, as

permitted by the STIP, to set Plaintiff's Individual Performance Multiplier to 0% based on her egregiously poor performance.

> B. **Plaintiff's Bonus Is Not A Wage For The Additional, Independent Reason That It Depended On Company Performance**

Plaintiff's bonus is also not a wage because "the payment is 'dependent on conditions other than the employee's efforts, [and thus] lie[s] outside the definition' of a wage."[4] *Ridgell*, 2024 WL 555137, at *3 (citation omitted). Plaintiff argues that "the fact that a bonus is based in part on the performance of the company 'does not carry those payments outside the MWPCL's definition of wages.'" (Opp. at 18-19). However, Plaintiff's cases apply this principle to profit-sharing plans, not performance-based bonuses. *See Blanch v. Chubb & Sons, Inc.*, 124 F. Supp. 3d 622, 634 & n.6 (D. Md. 2015) (argument that profit-sharing plan was not a wage because it "depende[d] on conditions other than the employee's efforts," was "pertinent only to [employee's] claim for unpaid profit sharing, not to his alleged entitlement to an outstanding bonus under [employer's] incentive plan."); *see also Aronson & Co. v. Fetridge*, 957 A.2d 125, 138 (Md. 2008); *Whiting-Turner Contracting Co.* 783 A.2d at 672–73. The STIP is not a profit-sharing agreement; instead it "provide(s) an opportunity for annual payments . . . to selected employees . . . to reward Participants for their contributions to the Company's financial success and thereby motivate them to continue to make such contributions in the future." (Roark Decl. Ex. 9).

The STIP is more analogous to the bonuses in *Ridgell* and *Martignetti*, cases issued more recently than all of Plaintiff's cases. Like the STIP, the bonuses in *Ridgell* and *Martignetti* "expressly reserved the right to adjust the terms of its incentive plan and to modify or cancel the plan." *Ridgell*, 2024 WL 555137, at *3 (citing *Martignetti*, 855 F. App'x at 859). *Aronson* involved

---

[4] Whether Company performance had already been determined is irrelevant as the STIP itself was still discretionary. *See Whitting-Turner*, 783 A.2d at 669–70 (holding payment was still discretionary and therefore not a wage even though the manager had the check in his pocket ready to give to the employee).

"terminating employee compensation" which "merely required [the employee's] continued employment with [the employer], followed by his involuntary termination." *Aronson*, 957 A.2d at 138–39. The STIP, however, depended on the Individual and Company Performance Multipliers, which were determined at the discretion of the employee's supervisor and the plan administrators respectively. (MSJ at 28). Therefore, "[f]or two independent reasons, [Plaintiff's] bonus is not a wage under the MWPCL: Because the bonus was discretionary and because it depended in part on her employer's performance overall." *Ridgell*, 2024 WL 555137, at *5.

## V.   Conclusion

For the foregoing reasons, the Court should enter summary judgment in CBS's favor with respect to all counts of the Complaint.

Dated: Washington, DC

October 21, 2025

Respectfully submitted,

/s/
Blair J. Robinson (admitted *pro hac vice*)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
Tel: 212-318-6000
blairrobinson@paulhastings.com

Claire A. Saba Murphy
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
Tel: 202-551-1700
clairesabamurphy@paulhastings.com
*Attorneys for Defendant*
Paramount Global

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served via electronic mail on October 21, 2025, on the following:

Norman G. Schneider
Kamerow Law Firm, PLLC
4900 Leesburg Pike, Suite 310
Alexandria, Virginia 22302
Tel: 703-370-8088
Fax: 703-370-1714
nschneider@kamerowlaw.com

Philip B. Zipin
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Tel: 301-587-9373
Fax: 240-839-9142
pzipin@zagfirm.com

*Attorneys for Plaintiff*

                                                                    /s/
                                         Claire A. Saba Murphy